The final case this morning is No. 16-2106, Pope v. Navy. Mr. Jarrett. Good morning and may it please the Court. There are five errors in this case, the first two of which concern the probative value of hearsay evidence in proceedings before the Merit Systems Protection Board and the intersection of immutable principles of jurisprudence and adjudication that are contained in the Fifth Amendment with the relaxed standards of evidence in administrative proceedings. I'm wondering what really is disputed here. I mean, you're right, there are cases like Hooper which express concern about the use of hearsay testimony in proceedings like this where we're dealing with an essentially criminal act in particular. But here, there's no question but that the petitioner here did hit his son with a belt. There is no argument that the son wasn't bruised. The issue is whether there was a connection between the two. And then the only other piece of relevant evidence that I saw was that the son made a statement that he'd been told not to talk about being hit with a belt, but that also seems to be undisputed that he said that. So I guess where are we in terms of what hearsay evidence that's disputed did the Board rely on here? Yes. So it's disputed that the son said that he was told not to speak. And we believe that that's triple hearsay. And so we don't believe that that is accurate. It's also disputed that the petitioner engaged in any abuse. Yes, there's a difference obviously between abuse and spanking, which is permitted. Well, he said he hit him with a belt, right? That's correct. We dispute that he caused the bruises. Well, right. It's a question of the connection. So just focusing on the connection, there wasn't any testimony, as I understand it, of a hearsay nature making that connection. The Board made the connection from two undisputed facts, as I understand it. I believe that the connection came from the police report that the Board relied on that was in the agency file. And so that therefore where did the police report make the connection? I believe that it says that the petitioner caused extreme bruising to his son's backside. But the Board relied more on just a police report for that particular factor. Mr. Pope admitted that he struck the child with a belt. I'm sorry? Mr. Pope admitted that he struck his child with a belt. So there's more than just a police report involved here. That's correct. I think that when you have to analyze, the Board had to analyze whether there was abuse. And so that they have to decide based on, as far as whether there was abuse, the Board had to look at the details of the bruising and the details which, and the only evidence. Are you saying they didn't do that? I'm saying that they relied on a hearsay police report. Where did they rely on the police report for the connection between the beating with the belt and the bruising, as opposed to making their own deduction about that? They did it when they relied on the location of the bruising. So they made a deduction based on the location of the bruising. They talked about the implausibility of the petitioner's testimony about this. They relied on that. But I guess what I'm saying is where did they rely on the police report for the causation element? In the location of the bruising. When they analyze, decide whether the bruising could have been caused by swordplay or jumping off a hill, they look at the location of the bruising, which is only contained in the hearsay police report, because there was no testimony about the location of the bruising. Was the location of the bruising disputed? I believe it was. And that it wasn't, that it was improper. And there's three different accounts even within the police report. One said that it was a small section of bruising. The other said it was up and down. The issue here, though, is whether there was abuse or not. And you're arguing elements that go to whether there was abuse or not. It's whether the conduct was unbecoming. That's correct. That's the issue that was before the board. That's correct. And so the board and this court applies the Bornicoff factors in deciding whether hearsay evidence could amount to substantial evidence. And if you look at the – and even in circumstances, so in the Bornicoff case, the individual was charged with a crime, was taken to jail, was pled guilty for a deferred sentence. And the court said that the evidence that relied on that he engaged in this misconduct, despite that corroborating evidence that he had been charged and pled guilty, that he – that that was insufficient given the need to be able to question witnesses. And that's the whole point of the – of excluding hearsay. And even under recognizing that hearsay is admissible, they found that when relying on a report, even corroborated by a criminal charge and a plea deal, that that's insufficient unless – without something more than the hearsay evidence. And so we submit to here that the only evidence outside of the hearsay police report is that he was arrested, that he admits to spanking his son, that he was arrested, and that he was charged, which is identical to the facts in Bornicoff and also in Cooper where the individual was not – they were not prosecuted, but they, again, were arrested and jailed for 14 days and then the victim declined prosecution. It's similar to the facts here in that the court said that the hearsay report generated in the police investigation was insufficient to support the government's burden of proving the conduct unbecoming by preponderant evidence. And here, as I mentioned, each of the five facts – five of the facts that the Bornicoff test unquestionably weigh against. The admission of the – the use of the PPD report, the police report to the constitute substantial evidence. The availability of people with firsthand knowledge to testify at the hearing. Whether the statements of the out-of-court declarants were signed or in affidavit form. The agency's explanation for failing to obtain signed or sworn statements. The agency did not call the police officer, did not call the babysitter, did not call the nurse, did not – the police report is unsigned. There are no affidavits. And the police – the agency did not offer an explanation for its failure to call these individuals. The seventh and eighth factors also unquestionably cut against the use of the police report to constitute substantial evidence in that Mr. Polk's testimony contradicts the report in that he says that he did not cause the bruising. And also, the credibility of the declarant, which in this case, if there's the first level of hearsay, is the police officer, while there's nothing that indicates the police officer had a motive to lie, that the police reports themselves are – which are prepared in anticipation of litigation are routinely found to be an admissible hearsay, including under the Federal Rules 8038. Essentially, the only thing that – the evidence the judge had and the board had before it was the omission, the criminal charge, the plea deal to a no prosecution, and the omission that there was a spanking that – by the petitioner. And we think that under Bornicoff and Cooper, that this is insufficient. This does not meet the standard of substantial evidence. For the second charge – There was also a lack of credibility of Mr. Polk's testimony. So at that point, we believe that the administrative judge did not make a credibility determination. And you can see that by comparing – or a demeanor-based credibility determination, excuse me. And you can see that by comparing – On page 822, the A.J. said, I find the appellant's alternate source explanations of Jacob's bruising implausible and not worthy of credit. So, I mean, that's evidence that he relied on that was not in the form of hearsay to reach this conclusion. I guess I'm still having trouble seeing – and I understand the point about the concern about hearsay, but I'm having some difficulty in seeing where they rely on hearsay for a disputed factual issue. The disputed factual issue, as far as when he's analyzing – he says he believes Mr. Polk minimized the allegations. He's relying on his analysis of where the location of the bruising – the only evidence of the location of the bruising, and there weren't even – the images were not put into the record, was based on that police report, which contained itself three or four different accounts of where the bruising was. That's where their reliance on hearsay when the judge is making deductions. The only thing he can make deductions based upon is his – it has to come through hearsay lens, which is that police report. As far as the second charge I just want to address quickly, that is – has a different hearsay problem. There, the hearsay is a letter that a witness that actually attended and gave live testimony saw – supposedly saw – that said that Mr. Polk was terminated. We think – so here, this is not a Bornicoff problem. This is just a lack of substantial evidence. In the record, there were a prior sworn statement from this witness that he had – the reasons for Mr. Polk's termination were these sort of outlandish things, that he had flown to Iraq without orders as an Air Force commander, that he had had a girlfriend that he'd seen that he'd hired, and that – sorry – he wore his military uniform on base. And at the hearing, this witness testified solely that the reason that Mr. Polk was terminated was for failing to follow procedures, and the only example he named was that he allowed the guards to wear black undershirts as opposed to white undershirts under their uniforms. And so here, our position is that this obvious contradiction that was in the record evidence undermines the credibility determination that the judge made. And I just want to make two – sorry, one more point that I've left. When we're talking about credibility determinations, as far as the first charge, the judge did not make a demeanor-based credibility determination. That is that he looked at the witness and said the witness appears untrustworthy. With respect to the first charge, the judge, in a conclusion sentence, said – that I find his account improbable, and I find that he minimizes his role in this. But that wasn't demeanor-based. With the second charge, he says – What does that matter? So there's more – so under the Lopez decision, the board gives greater weight to a demeanor-based determination. It's not as though the board set aside this finding and agreed with it. That's correct. I'm saying that the first charge is not entitled to the same deference of a demeanor-based credibility determination. And the second charge, while it is a demeanor-based credibility determination, is contradicted by the prior inconsistent statement of the witness. And so I'll reserve my remaining time. Okay. Thanks. Ms. Echols? Good morning. May it please the Court. The Court should affirm the board's decision denying Mr. Pope's petition for review and affirming the administrative judge's initial decision sustaining his removal. The evidence established that Mr. Pope engaged in conduct unbecoming a security specialist when he beat his 4-year-old son – What about the hearsay evidence? As you know from my opinion in Long, I have some concerns about the board's approach in this area. I mean, suppose we had here, instead of admitted facts, suppose that the issue on whether the petitioner had hit his son with a belt was disputed and that the board relied on the hearsay in the police report to find that he committed the act. And that was the only evidence that it relied on. Would that be sufficient? It depends on the probative value of that police report. And it depends on how the administrative judge and, flowing from that, the board, engaged in the weighing of those factors. What does that mean? In my hypothetical, that's enough? The police report says that this conduct occurred and that's the only evidence that the board relied on? They can find that somebody committed the act based on that? It may not be enough, Your Honor, depending on the nature of the report. But what we have here is more than just that. What do you mean the nature of the report? Depending on whether or not the report was signed, depending on whether or not there's other corroborating evidence. That's just not the case here. What we have is the board and the administrative judge saying, not only are we looking at this police report, which we understand has some factors that weigh against its probative value, but we find that ultimately enough factors weigh in favor of its probative value. But in addition to that, we have these undisputed facts, which Your Honor alluded to earlier, or referenced earlier. The fact that Mr. Pope hit the child with a belt either Thursday or Friday due to the child's violent behavior at school. Undisputed evidence that the nanny saw the bruising the following Monday and had not prior to that point ever seen any bruising on the child. The fact that the nanny reported the bruising to the child care facility and ultimately the authorities following her discovery of those bruises on Monday. It's undisputed by Mr. Pope's own testimony that he was arrested for aggravated child abuse and that he agreed to enter into the pre-trial intervention program because he thought essentially prosecution was inevitable. What is the evidence of the scope of the bruising on the boy's body? I believe Mr. Pope doesn't dispute where the bruising was on the child's body. The police report does note as a result of its inclusion of the medical examination that there was bruising from the child's back all the way down his buttocks, down the backs of his hamstrings and to his shins. But to the extent that he says the entire police report is hearsay, I thought you were identifying either evidence or admissions or something that showed at least one of the crucial facts independent of the crime report, of the police report. Yes, Your Honor. So taking away the identification of the locations on the body in the police report, again, Mr. Pope acknowledges and it's undisputed that the child was bruised on the back of his body. Now the extent of that bruising and how far it extended from the back down to the child's shins may be a question that is further illuminated by the police report, but he does not dispute. Or even the severity, both locations' severity would seem to matter here. Yes, Your Honor. But the fact of the matter was Mr. Pope does agree that that bruising existed on Monday. And so he's saying that in addition to those undisputed facts by Mr. Pope's own testimony and setting aside the police report, we also have the administrative. On page 819, the A.J. says while the appellant has never contested that Jacob had the bruises as reported. Is that true that he didn't contest that? I'm sorry, Your Honor. Can you repeat that? This is the first line of 819. The A.J. says the appellant has never contested that Jacob had the bruises as reported. Is that true? I believe that the administrative judge is correct. I've not seen where Mr. Pope has contested specifically the findings of the police report with respect to that bruising, except now in briefing before the court, there is some allusion to, well, maybe there could have been more evidence as to the extent and nature of that bruising. But the fact of the matter is at hearing and in pre-trial submissions, at pre-hearing submissions, that the child had been bruised in the nature described was not disputed by Mr. Pope. He was disputing that whether or not he was a source of the bruising, correct? That is correct, Your Honor. He said that the bruising was the result of playing with friends and horsing around. That's exactly right, Your Honor. And as part of the administrative judge's credibility analysis that it goes through step by step, it takes up this idea, these post hoc alternative theories for the source of the bruising provided by Mr. Pope at the hearing, and the administrative judge walks through each one of those alternative theories step by step and explains why it is as a logical matter, based on Mr. Pope's testimony, that it's implausible that either or any one of those three alternative theories makes sense. It just does not fly. I believe the judge said it exceeded the bounds of credibility. In addition to that credibility finding, the judge also makes a demeanor-based credibility determination, and that is with respect to this idea that Mr. Pope testifies at the hearing that he only hit the child two or three times with a belt. That was his testimony. The reason why the... Two or three times on this occasion? I believe that's correct, Your Honor. And the administrative judge, having heard his testimony and having lived with the case, made the determination that it just seemed like he was trying to downplay this. He was trying to minimize the severity by which he assaulted the child. And as this court recognized in pure FOIA, it doesn't have to be an explicit statement that the administrative judge is making a demeanor-based credibility finding. It can be enough that hearing testimony, implicit in hearing that testimony and witnessing the witness at the hearing, implicit in that is this assessment or analysis of the demeanor of the witness. And so a credibility-based determination... Excuse me. A demeanor-based credibility determination need not be explicit for the court to recognize that that's the kind of determination that's being made with respect to a testifying witness' credibility. Can you point... Where did the A.J. specifically make the remarks about demeanor that you're referring to? On A22, in the last paragraph, there's after the judge addresses the alternate source explanations for Jacob's bruising, goes on to make a separate finding that reads, Further, I find that the appellant's testimony that he struck Jacob two or three times with a small belt attempts to minimize what punishment actually occurred, the very punishment the appellant instructed Jacob not to tell anyone about. And so in that, implicit in that... He doesn't rely on demeanor. He doesn't explicitly say he's relying on demeanor there. But implicit in his assessment there, his analysis there, is the fact that he just did not believe him when he was testifying. And implicit in that again, as the court recognized in Pure Fourth, is an assessment of the witness' demeanor. But even if the court were to find that this were not, or was not a demeanor-based credibility determination, it is a credibility determination. It is part of the court's credibility analysis in which the court weighs all of the evidence. And so in that, there is still deference owed to the administrative judge in making that credibility analysis. And there's nothing on the record with equal weight to contradict those findings. Again, even if we take away the police report, which was properly admitted, even if you take that away, you're left with the fact that Mr. Pope offers no credible alternative explanation for how the child received this bruising. And the alternatives that he provides, he only provides as a matter of convenience when he's testifying. These were not represented in his pretrial submissions, or at least the platelet condition was not. And the alternate theories were inconsistent with the actual bruising that's found on the child. Can I ask you about a different topic? What's in footnote four on page three of the board's opinion in which the board rejects, I think two sentences, the submission that Mr. Pope made of the then brand new defense department reaffirmation of his security clearance, notwithstanding pretty much hearing this entire story and evidence behind it. And the board said, first of all, you didn't comply with the regulation. And I'm frankly not sure why that's right. And second, the evidence is not material to the outcome of the appeal. So on the regulation, the board seems to say that if you're going to submit evidence like this, you have to move to do it before actually submitting the evidence. Tell me why the regulation says that. I don't think it does. No pleading other than the ones described in this paragraph will be accepted unless the party files a motion with and obtains leave from the clerk of the board. He did file a motion. I believe when Mr. Pope did it, he didn't seek leave of court to file the motion. He just filed the motion. And the regulation asked that the petitioner seek leave to do so before filing the motion. This doesn't say leave of the clerk to file the motion. It's leave of the clerk, I would think, to have the evidence or the pleading be accepted. My understanding of that, Your Honor, would be, for example, if a party were to be out of time for a filing, for example, and instead of just going ahead and filing whatever the, let's say it was a response, instead of filing the response after the time has run to do so, you must first seek leave of the court to get permission to make that filing. And then you may make the filing. And my understanding is— I mean, why does that make any sense? He files a motion that says—and the second sentence says you actually have to justify the motion, right? So how do you get—how do you even give the clerk an intelligible basis for deciding whether to allow whatever it is without showing and arguing? I think that it could—seeking leave may preview what the motion may say without actually filing the motion to say here's a piece of evidence that's been developed that was not available during— Is there some board precedent that says this, at least to my mind, extremely peculiar idea of a two-step process like this is what's been understood to be required? I don't have any board precedent that I can refer Your Honor to except to say that the regulation does say what it says. Right, but I don't think the regulation says what the board seemed to say it said. It might— It says you have to file a motion before filing some additional pleading. He filed a motion, said here's my motion. There's a recent defense department, central adjudicatory authority, command of something that says we've looked at all this evidence. We think he can keep his security clearance. Attaches his stuff. What in the world is wrong with that? Your Honor, I think that it just comes down to whether it's just a procedural issue and that's the board's own interpretation of its procedure. But even if the board is wrong about that— Talk about why it's not material. On the conduct unbecoming, which I assume would be kind of the nexus to the functioning of here, I guess it's the Navy, when the Air Force—actually, it's not the Air Force. The central—the Department of Defense central adjudicatory command or whatever it is. They're responsible for the Navy as well, and it's not precisely the same question, but why is that not a significant piece of evidence? I think precisely—Your Honor acknowledges that the board—I mean, sorry, the central adjudication facility for the Air Force division doesn't take up precisely the same question as the administrative judge did. Is the submission that he attempted to make in the record here? The motion itself? Well, the thing from the defense central adjudication facility. I'm not sure that it is, Your Honor. I would have to go back and look at the— But the motion is at 570, and it attaches—is this an email or something? Anyway, it attaches a message from the central adjudicatory facility that says, you get to keep your—your clearance was favorably adjudicated for SCI. This is at 578, SCI eligibility on November 6th, 2015, based on your response to statement of reasons. The statement of reasons is essentially the charging sheet, which looks rather like the story on which this proceeding is based. Even if— And that's at 584, the statement of reasons. Even if, you know, the determination that Mr. Pope sought to have admitted should have been admitted because there was no procedural defect. We're still left with the issue of the materiality of it, and even if— Yeah, and that's the problem because what the board seems to be saying is that we'll rely on the hearsay in the police report about the incident, but we won't rely on the conclusion that was reached by the defense adjudication facility. It does seem a bit inconsistent, doesn't it? Well, the reasons are different.  that was before the agency and before the board, and in addition to that, the central adjudication facility did not have the same record. What issue did it take up? I mean, whether he should keep his security clearance, right? Ultimately, whether he should keep his security clearance, but it did not address specifically whether or not he had the temperament to exercise deadly force as he would be required to do in this specific job. That's not part of the security clearance? It's related, Your Honor, but it's not squarely the same question. I mean, certainly that's part of the security clearance, is that somebody has the temperament to exercise judgment, right? I believe that it would be, but again, the board and the—this court, the board and the administrative judge had a different record. They did not have the benefit of hearing Mr. Pope on the stand, minimize what he'd done. Neither did the police report. But the administrative judge, Your Honor, did not rely exclusively on that police report. It relied in large part on Mr. Pope's own undisputed testimony, as well as this determination that he appeared to be minimizing what he'd done to the child. And separate and apart from that, with respect to the lack of candor charge, there's clearly a demeanor-based credibility determination, and that's set out explicitly in the administrative judge's decision, where the judge is comparing the testimony of the employee with that of Mr. Pope, and the central adjudication facility did not have the benefit of any of that testimony when making its decision. I mean, did the police report people have them? That's correct, Your Honor. But again, that was not the only piece of evidence considered by the judge or the board. No, but it's just a question of whether they should have considered this evidence from the security clearance or not. Even—we believe, as the administrative judge sets out in its opinion, as the board sets out in this decision, that the reasons for considering that police report were sound and that there were enough factors that weighed in favor of the appropriate value of that report. But again, even setting aside that report, there is substantial evidence to support the administrative judge and board's decision sustaining the charge of conduct unbecoming. If the court has no— I have a question. So the letter that he submitted to show that he was eligible for security clearance, was that untimely? I'm sorry. Was that an untimely file? The letter? The letter that he submitted from the Air Force stating that he was now eligible for security clearance. Was it untimely? Is that what he sought the motion to file? Yes, Your Honor. Well, he sought the motion to file the— or the motion sought to have the court consider the central adjudication facility's determination that he could continue with his— And was that filing out of time? Was it too late to do that? Is that why he filed a motion for leave? He essentially filed—or should have filed a motion for leave, but he— He filed it when he did because that's when he got the information, right? That's correct, Your Honor, and it was after the evidence had closed, the hearing had concluded. But it was out of time, so he had to file a motion for leave to— or permission to file it. That's correct, Your Honor. The court— So you're not suggesting that we can sustain the board because it had substantial evidence if it improperly excluded other evidence, right? If the court were to find that that material was— I mean, I'm sorry. If the court were to find that the central adjudication facility's determination was material as to the question of whether or not he— either of those charges should be sustained, then—and that the court improperly excluded that evidence, then it ought to be remanded. However, that determination is not material, and separate and apart from that, the record still stands that the administrative judge, the board, and this court have a far more complete and thorough view of what happened in both of these circumstances than did the central adjudication facility. But there was another circumstance, wasn't there, where he lied on his employment form? That's correct, Your Honor. On charge two, which was the lack of candor charge, Mr. Pope was charged with not having disclosed that he was employed with U.S. Protect, which was a defense contractor with whom— And in addition to not disclosing that he held that employment, he also purposely omitted the fact that he was terminated from that employment. And he didn't just do so on one occasion. He did so on three separate occasions where it was clear and explicit that in order to provide an accurate and complete response, as he was obligated to do, that he must provide, without any breaks, all of his employment and the reason for separation. Are those incidents related to what he was using his girlfriend as his personal assistant? Yes, Your Honor. That is rolled into the reasons for his termination from U.S. Protect. And to go to the point that Mr. Jarrett made, whether or not there's inconsistency in the record with respect to the reasons for that termination, the through line is that he was terminated. Yeah, but was there a finding by the decision-maker here or by the board that he would have been terminated based on this omission in the form, standing alone? There's no explicit determination by the board or the administrative judge or the deciding official that one charge alone would result in his termination. But what we see in the deciding official's decision is that the deciding official provides a complete explanation of the nexus for each one of those charges. Yeah, but under LeChance, if we conclude under these circumstances, if we conclude that one charge had to be set aside or required a further hearing, you couldn't sustain it on the other charge, right? Respectfully, Your Honor, I disagree. I think under LeChance, the court, there's a presumption created when the most egregious of the charges remains and is sustained. And here, we have two charges of equal weight, both warranting dismissal in the first instance. And so even though one of those charges is dismissed or is not sustained, we're still left with another pretty serious charge. Both of these charges carry equal serious weight in our egregious offenses that relate to Mr. Pope's ability to do his job. And so even if the court were not to sustain one of those, the remaining charge still warrants the penalty of dismissal. Even without a finding by the board that that's the case? Even without a specific finding, so long as there's no... What case says that we can do that, that it's up to us to make a determination as to whether one is sufficient? There's no case that I'm aware of, Your Honor, that says that it's up to the court to make a determination as to whether or not it's sufficient. But LeChance stands for the proposition that where there are combined charges, and one of those charges, the most egregious of those, is sustained, then there is a presumption created that the agency would have gone through with the same penalty as it did on the combined charges, unless there is evidence to the contrary. And here, we don't have any of that, and certainly it's still left to the agency's discretion, and the agency would still move forward with his removal. Okay. Thank you. Thank you. Thank you. With my remaining time, I'd just like to address the evidence that was excluded of the security clearance determination. And it's argued that it is material. And if you look in the testimony of the deciding official, the deciding official considers, when questioned by the judge, the possibility that he wouldn't, that Mr. Pope would end up losing his clearance and saying, I could work with him on the lack of candor charge. However, it's likely that he would lose his clearance. And so that I think even though it's a separate body. Can I just ask? The word material is playing, it seems to me, two roles here, and I want to try to understand this. The board, in its footnote, said, it didn't follow the regulation. I want to put that aside. I think that's probably wrong. Then it said, it didn't say, and the evidence is not new and material evidence under some regulation. It said, this has no material effect on the outcome, which sounds like the board looked at the evidence, considered it, and decided even if we now admit it and consider it, it wouldn't change our determination. If you interpreted it that way, what would be problematic about it? I believe that what's problematic is that there's not a discussion of the evidence and that there was no consideration of the determination. And I don't think that that, essentially, I don't think that footnote addresses that it was a reasoned determination that it was immaterial, and I don't think they're substantial. In the motion that you submitted, I guess, starting at 573, you have Appendix A, which has, I guess, this message that says, your clearance was favorably adjudicated for a security clearance eligibility based on your response to a statement of reasons. We don't have a response, right? No, I don't believe so. And do you know, was there a live hearing that's part of that security clearance process, or is this all paper, or what? It predated me. My understanding is that it's normally on papers. But I think that that's important here. There was not a more well-developed record before the security clearance adjudicators. And the same evidence that Mr. Pope was charged and pled guilty or accepted no prosecution and the fact of the police report, I believe, was before the adjudicators. The issue is just saying that he minimized, there was no great elusive, there's no credibility determination. He just denied the fact that he caused the bruising. And I think that there isn't any, there's no greater evidence in the record from the judge who just looked at the police report and the facts that he admitted to the spanking and charged and convicted than was before the DOD GAF. Could you submit to us, please, a copy of the response that was referred to? Yes. Without argument, just submit this response. I understand. And if there's no further questions. Okay. Thank you. Thank you both counsel. The case is submitted. That concludes our session for this morning. All rise. The Honorable Court is adjourned until tomorrow morning at 10 a.m.